# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KEISHA WRIGHT *Parent and Next Friend of J.J., et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DISTRICT OF COLUMBIA *A municipal corporation*, <br><br> Defendant. | Civil Action No. 18-2818 (ABJ) |

## MEMORANDUM OPINION

Plaintiffs Keisha Wright and her minor son, J.J., brought this suit against defendant, the District of Columbia, to recover attorneys' fees and costs incurred in an administrative action brought under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq*. Compl. [Dkt # 1] ¶¶ 1–2. Plaintiffs moved to recover $103,084.00 in attorneys' fees and costs on the basis that they prevailed in the underlying administrative action. Pls.' Mot. for Atty. Fees [Dkt. # 8]; Mem. of P. & A. Submitted in Supp. of Pls.' Mot. [Dkt. # 8] ("Pls.' Mem.") at 3. Defendant opposed the motion, arguing that the amount sought is unreasonable and not supported by sufficient evidence, Def.'s Opp. to Pl.'s Mot. [Dkt. # 9] ("Def.'s Opp.") at 7–25, and plaintiffs filed a reply. Pls.' Mem. of P. & A. in Reply to Def.'s Opp. [Dkt. # 10] ("Pls.' Reply"). Defendant does not dispute that plaintiffs prevailed in some respects, but it notes that some of their administrative claims were unsuccessful.

1

For the reasons stated below, the Court will grant plaintiffs' motion for attorneys' fees in part. The Court will award $70,051.52 in attorneys' fees for the underlying administrative proceeding, and $461.14 in costs.

**BACKGROUND**

On May 31, 2018, J.J., a minor-aged child, and his mother, Keisha Wright, brought an administrative action against the District of Columbia Public Schools ("DCPS") alleging that J.J. had been denied a Free Appropriate Public Education ("FAPE") in violation of the Individuals with Disabilities Education Act ("IDEA"). Compl. ¶ 11; Ex. 1 to Pls.' Mot. [Dkt. # 8-1] ("Admin. Compl.") at 3–29.[1] At the time, J.J. was enrolled in a D.C. public high school and he was eligible to receive special education services as a student with learning disabilities. Compl. ¶ 6; Admin. Compl. at 7. Plaintiffs alleged several violations of the IDEA based upon the school system's failure to comprehensively evaluate J.J., and to provide him with adequate Individualized Education Programs ("IEPs") and an appropriate school placement. Compl. ¶ 11.; Admin. Compl. at 13–17. Plaintiff argued that as a result of the District's inaction, J.J. was failing all of his academic courses and his reading and math skills were at a 5th grade level. Admin. Compl. at 9–10.

The D.C. Office of the State Superintendent of Education ("OSSE") held a hearing with the parties on October 1 and 5, 2018. Ex. 2 to Pls.' Mot. [Dkt. # 8-1] ("Hearing Officer Determination") at 32. On October 13, 2018, the Hearing Officer issued a final determination in which he partially ruled in plaintiffs' favor. *Id*. at 42–53. Defendants were ordered to fund 150

---

1     Because the exhibits attached to plaintiffs' complaint and motion do not have Bates numbers, the Court will use the page numbers that appear at the top right of the header as the document appears on the public docket.

hours of academic tutoring and 30 hours of counseling from independent providers "in order to put [the] Student in the place [he] should have been, but for the denials of FAPE." *Id.* at 51.[2]

On December 3, 2018, plaintiffs filed this suit for attorneys' fees and costs related to the underlying IDEA administrative action. Compl. ¶ 1. Plaintiffs seek attorneys' fees and costs in the amount of $103,084.00, Pls.' Mem. at 3, and in support of that request, they attach an invoice that lists the following rates and hours expended by their attorneys and professional staff in the administrative proceeding:

- Kiran Hassan, Attorney: 174.92 hours at $517.00 = $90,433.64
- Robert Jones, Attorney: 3.70 hours at $397.00 = $1,468.90
- Ebony Johnson, Attorney: .68 hours at $323.00 = $219.64
- Coreen Williams, Law Clerk: 2.67 hours at $156.00 = $416.52
- Kelly Escamilla, Paralegal: 1.50 hours at $156.00 = $234.00
- Lucy Hernandez, Paralegal: 24.68 hours at $156.00 = $3,850.08
- Ashley Elliot, Expert Witness: 39.16 hours at $263.00 = $10,299.08

---

2   The Hearing Officer found that the District's denial of a neuropsychological evaluation, an ADHD evaluation, and an occupational therapy re-evaluation, did not constitute a denial of FAPE. Hearing Officer Determination at 44–46.

*See* Ex. 3 to Pls.' Mot. [Dkt. # 8-1] ("Time Records") at 72. Plaintiffs argue that they are entitled to compensation based on a small discount to the United States Attorney's Office ("USAO") *Laffey* Matrix rate. Pls.' Mem. at 6–10.[3]

Defendant argues that plaintiffs' requested award is unreasonable because "(1) [p]laintiff[s] have provided insufficient evidence that the hourly rate in the USAO Matrix is the 'prevailing market rate' for attorneys practicing IDEA law in the District, and (2) [p]laintiff is, at most, a partially prevailing party, and any award should be reduced to reflect the issues on which she was not successful." Def.'s Opp. at 1. Defendant insists that plaintiffs should not be awarded more than $38,593.21. *Id.* at 25.

## STANDARD OF REVIEW

The IDEA provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the cost . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). If a court determines that the plaintiff seeking attorneys' fees is a prevailing party, it must determine whether the requested attorneys' fees are reasonable. *Reed v. District of Columbia*, 843 F.3d 517, 520

---

3 The *Laffey* Matrix is "a schedule of charges based on years of experience developed in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985)." *Covington v. District of Columbia*, 57 F.3d 1101, 1105 (D.C. Cir. 1995). Two competing versions of the matrix have been developed in the past thirty years: one created by the United States Attorney's Office for the District of Columbia ("USAO *Laffey* Matrix"), which is based on "data for all types of lawyers – not just those who litigate complex federal cases – from the entire metropolitan area," and a second known as the Legal Services Index ("LSI") Matrix, which exclusively relies on hourly rates charged by complex, federal court practitioners in the District of Columbia. *DL v. District of Columbia*, 924 F.3d 585, 587 (D.C. Cir. 2019). The second includes higher rates which the plaintiffs are not seeking in this action. The version of the USAO *Laffey* Matrix that is relevant to this case is available at https://www.justice.gov/usao-dc/file/796471/download; *see also* Ex. 9 to Pls.' Mot. [Dkt. # 8-2] at 23.

(D.C. Cir. 2016). Courts typically determine the reasonableness of attorneys' fees based on the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

A plaintiff bears the burden of establishing both the reasonableness of the hourly rate and the reasonableness of the number of hours spent on a particular task. *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015), *citing Covington v. District of Columbia*, 57 F.3d 1101, 1107–08 (D.C. Cir. 1995). To show the reasonableness of the hourly rates, a plaintiff must submit evidence related to: (1) "the attorneys' billing practices"; (2) "the attorneys' skill, experience, and reputation"; and (3) "the prevailing market rates in the relevant community." *Covington*, 57 F.3d at 1107. To show the reasonableness of hours spent on a task, a plaintiff must submit a "sufficiently detailed [invoice] to permit the District Court to make an independent determination whether or not the hours claimed are justified." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982).

After the moving party has met this burden, the number of hours and rate are presumed to be reasonable, and the non-moving party must rebut the moving party's showing with "equally specific countervailing evidence." *Covington*, 57 F.3d at 1109–10, *quoting Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1326.

## ANALYSIS

Defendant does not dispute that plaintiffs were the prevailing party in the underlying administrative action within the meaning of the IDEA and that they are therefore entitled to some

amount of attorneys' fees. *See* Def.'s Opp. at 1. The only question before the Court is whether the attorneys' fees and costs sought by plaintiffs are reasonable.[4]

### I. Reasonable Hourly Rates

Plaintiffs contend that their lawyers' rates, which are based on a small discount to the USAO *Laffey* Matrix rates, approximate the prevailing rates in the community. Pls.' Mem. at 6–10. For example, attorney Hassan, who billed the most hours, qualified for the $536.00 hourly billing rate under the USAO Matrix for the 2017-2018 year, and $544.00 for the 2018-2019 year. Pls.' Mem. at 7. But in this case, she billed at the reduced rate of $517.00 per hour. *Id.* Defendant insists that the prevailing rate in this jurisdiction for IDEA litigation is in fact 75% of the USAO Matrix rate, and it argues, among other things, that plaintiffs have not put forth sufficient evidence to establish the reasonableness of the rates they seek. Def.'s Opp. at 13–14, 19–22.

Fees awarded under IDEA must be "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). "Fee applicants in IDEA cases have relied on two separate, but inter-related, approaches to providing evidence of prevailing market rate." *Reed*, 843 F.3d at 521. They can demonstrate that IDEA litigation qualifies as "complex federal litigation," or they can "provid[e]

---

4   Defendant does not challenge the attorneys' billing practices or skill. *See generally* Def.'s Opp. The Court finds that plaintiffs' evidence, which consists of counsels' declarations and resumes from legal staff, adequately supports their attorneys' billing practices and their skill, experience, and reputation. *See* Verified Statement of Kiran Hassan, Ex. 4 to Pls.' Mot. [Dkt. # 8-2] ("Hassan Decl.") ¶¶ 8–9, 13, 15; Verified Statement of Robert Jones, Ex. 5 to Pls.' Mot. [Dkt. # 8-2] ("Jones Decl.") ¶¶ 8–13; Ebony Johnson Resume, Ex. 6 to Pls.' Mot. [Dkt. # 8-2]; Lucy Hernandez, Kelly Escamilla, Coreen Williams, Resumes, Ex. 8 to Pls.' Mot. [Dkt. # 8-2].

evidence of the fees charged, and received, by IDEA litigators." *Id.* Here, plaintiffs have taken the latter approach.

In support of their position, plaintiffs supply their attorneys' sworn statements, averring many of the firm's clients are "low income families seeking legal representation for their special needs children," Hassan Decl. ¶ 9, and that their hourly rates are "consistent with the rates prevailing in this area, for the kind and quality of services furnished by attorneys of comparable skill, experience and reputation." *Id.* ¶ 10; *see also* Jones Decl. ¶ 15 (same). In addition to their attorneys' declarations, plaintiffs cite four district court opinions which granted the full USAO Matrix rates based, in part, on declarations from other IDEA practitioners attesting to that rate. Pls.' Mem. at 7–8, citing *Jones v. District of Columbia*, No. 15-CV-01505, 2019 WL 652349, at *6 (D.D.C. Feb. 15, 2019) (noting that plaintiff provided her own counsel's affidavits and "affidavits from five attorneys practicing special education law in the District of Columbia"); *Wimbish v. District of Columbia*, 251 F. Supp. 3d 187 (D.D.C. 2017) (reviewing nine affidavits from IDEA practitioners); *Copeland v. District of Columbia*, 208 F. Supp. 3d 255, 257 (D.D.C. 2016) (noting that "plaintiff has submitted affidavits from five IDEA practitioners, unaffiliated with this litigation, all of which support [p]laintiff's contention that IDEA litigators commonly charge and are awarded standard Laffey rates"); *Merrick v. District of Columbia*, 134 F. Supp. 3d 328, 334 (D.D.C. 2015) (noting that plaintiffs submitted seven affidavits from IDEA practitioners attesting to the rates they charge and are awarded for IDEA cases).

The Court has reviewed the affidavits submitted in those cases, which were incorporated by reference, as well as the practitioners' affidavits in this case, and it finds that plaintiffs have carried their burden to establish that their requested rate reflects the "rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."

7

20 U.S.C. § 1415(i)(3)(C). The detailed affidavits from IDEA practitioners that are not affiliated with this litigation support plaintiffs' contention that IDEA litigators commonly charge and are awarded full USAO *Laffey* Matrix rates or higher. *See, e.g.*, *Jones v. District of Columbia,* No. 1:15-cv-1505 (D.D.C. 2018) [Dkt. # 51-14], Decl. of Alana Hecht ¶¶ 12–13, 44 (averring that the law firm D.C. Disability Law Group, P.C., which provides special education litigation services to indigent clients, charges and is awarded full USAO *Laffey* Matrix rates); *Wimbish v. District of Columbia*, No. 1:15-cv-1429 (D.D.C. 2019) [Dkt. # 60-11], Decl. of Charles Moran ¶¶ 5–7 (declaring that as an IDEA practitioner, he receives USAO Matrix rates in this jurisdiction and that based on his communications with other practitioners, he believes the USAO Matrix rates represent the prevailing rate in this community); *Copeland v. District of Columbia*, No. 1:13-cv-0837 (D.D.C. 2015) [Dkt. # 29-1], Verified Statement of Domiento C.R. Hill ¶ 14 (stating that the "75% USAO rate . . . [is] unreasonably low and below market rates" for IDEA litigation in the District); *Merrick v. District of Columbia*, No. 1:14-cv-1174 (D.D.C. 2015) [Dkt. # 18-7], Verified Statement of Nicholas Ostrem ¶ 4 (averring that his law firm, which focuses on special education law in the District of Columbia, bills at the higher LSI *Laffey* Matrix rates).

Defendant argues that IDEA litigation does not qualify as complex federal litigation, so the plaintiffs' application of the USAO Matrix rates is unjustified. Def.'s Opp. at 10–11. But as plaintiffs correctly point out, the USAO Matrix is not limited to complex federal litigation. Pls.' Mem. at 8, Pls.' Reply at 3. Indeed, the D.C. Circuit recently observed that the USAO Matrix has been based since 2015 on "data for all types of lawyers – not just those who litigate complex federal cases – from the entire metropolitan area." *DL v. District of Columbia*, 924 F.3d 585, 587 (D.C. Cir. 2019). As one other court in this district noted, "[t]he current version of the USAO

Matrix is in fact designed to be representative of the prevailing hourly rates for a broad range of legal work in this area, not just for 'complex federal litigation.'" *Jones*, 2019 WL 652349, at *9.

Many of the cases defendant cites in support of its argument that the "overwhelming majority of cases" in this district discount the USAO *Laffey* Matrix by 25% rely on the mistaken premise that the USAO *Laffey* Matrix is solely limited to complex federal litigation. Def.'s Opp. at 13–14, citing *James v. District of Columbia*, 302 F. Supp. 3d 213, 221 (D.D.C. 2018) (holding that the USAO *Laffey* Matrix was intended to apply to complex federal litigation alone); *Lee v. District of Columbia*, 298 F. Supp. 3d 4, 13 (D.D.C. 2018) (holding that "absent a showing that IDEA litigation is complex" the application of the USAO Matrix is unjustified). Moreover, it is the Court's view that IDEA cases *can* be complex, particularly when they involve multiple fact witnesses and experts, and require an understanding and presentation of complex diagnosis and multi-disciplinary plans of action, as was the case here. *See* Hearing Officer Determination at 32. However, plaintiffs do not base their fee request on such a finding, and the Court need not make a such a determination since it finds that plaintiffs' evidence, including the incorporated affidavits of other IDEA practitioners, independently demonstrate that the prevailing rate in the community approximates the full USAO Matrix rates. *See Eley*, 793 F.3d at 105 (Kavanaugh, J., concurring) (expressing view that USAO *Laffey* Matrix rates are "appropriate for IDEA cases").

This ruling is consistent with the Supreme Court's instruction that a "reasonable fee" should be "adequate to attract competent counsel, but . . . not produce a windfall to attorneys." *Blum v. Stenson*, 465 U.S. 886, 897 (1984) (citation omitted); *see also Reed*, 843 F.3d at 529 (Tatel, J., concurring), quoting *Forest Grove School District v. T.A.*, 557 U.S. 230, 239 (2009) ("Deeming IDEA litigation eligible for *Laffey* rates would comport with the Supreme Court's instruction that a reasonable fee is one 'adequate to attract competent counsel,' thereby advancing Congress's goal

that 'all children with disabilities' receive a free appropriate public education 'designed to meet their unique needs.'") (citation omitted). As plaintiffs note, other courts in this district have held that the rate the District proposes may be insufficient to attract competent counsel, and thus, unreasonable. Pls.' Mem. at 8; Pls.' Reply at 3–4. After reviewing the affidavits of several practitioners, one court found evidence of "real hardship among IDEA practitioners, and a curtailing of their practices, not because of an insufficient number of would-be plaintiffs seeking vindication of their children's IDEA rights, but because IDEA attorneys cannot afford to accept as clients those potential IDEA plaintiffs unable to afford to pay fees or to bring their cases." *Jones*, 2019 WL 652349, at *13. That same opinion quoted a practitioner who averred that, "[t]he reasons I have found it impossible to sustain a practice for indigent parents and students by relying on the 'fee-shifting' provision of the IDEA include . . . some judges regularly awarding hourly rates at 75% of the rates in the USAO fees matrix . . . and the general inconsistency and insecurity of income earned through fee litigation." *Id.* Similarly, another court in this district, quoted a practitioner who stated that, "'it is impossible to maintain [an IDEA] practice' where judges award 75%-of-standard-*Laffey* rates." *Copeland*, 208 F. Supp. 3d at 257.

This Court is particularly mindful of these concerns given the key role courts play in determining the "prevailing market rate" under fee-shifting civil rights statutes such as the IDEA. IDEA litigation in this jurisdiction is primarily undertaken on a contingency basis, and paying clients are rare. *Merrick*, 134 F. Supp. 3d at 340 n.7; *Jones*, 2019 WL 652349, at *11 (referencing affidavits indicating that most IDEA litigation is on behalf of clients who cannot afford legal services). Were the Court to reflexively reduce attorneys' hourly rates by 25% as the District requests, it runs the risk of thwarting the very purpose of the IDEA's fee-shifting provision – to expand access to legal services and promote enforcement of the statute. Accordingly, the Court

10

will award the attorneys' full rates in this case, which it notes, fall slightly below the full USAO *Laffey* Matrix rates.

## II. Hours Reasonably Expended and Reduction for Limited Success

Plaintiffs have the burden of demonstrating that the number of hours expended on particular tasks by their attorneys were reasonable. *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327. Attorneys must "maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *Id.* "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. Moreover, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434.

Plaintiffs have submitted time records describing the hours expended by each attorney and paralegal for the tasks performed in the case. *See* Time Records. Their lead attorney, Kiran Hassan, avers that that those documents are accurate and contemporaneously recorded. Hassan Decl. ¶ 6. Defendant does not challenge the accuracy of the Time Records. *See generally* Def.'s Opp. Nor does it challenge any particular task as excessive. *Id.* Instead, it argues that since plaintiffs "did not obtain the full measure of the relief they requested," Def.'s Opp. at 23, the Court should reduce the fee award by at least 50%. *Id.* at 25. Plaintiffs acknowledge that they partially prevailed, but they argue, that the Court should reduce the fee award by no more than 10%. Pls.' Reply at 5–7.

Courts may reduce attorneys' fees based on the degree of success achieved in litigation. *Hensley*, 461 U.S. at 433.[5] In *Hensley*, the Supreme Court stated that "[t]here is no precise rule or formula for making these determinations." *Id.* at 436. While it may seem logical to deduct a fee award based on the number of unsuccessful claims, the Court held that a "claim-by-claim" approach is not possible when claims are interrelated by a "common core of facts" or overlapping legal theories, as is the case here. *Id.* at 435. Instead, district courts should assess cases holistically, and "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* Therefore, when a plaintiff "obtains excellent results," a "fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit," which may include alternative legal arguments. *Id.* That said, if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount," even when the claims are "interrelated, nonfrivolous, and raised in good faith." *Id.* at 436. Ultimately, "[t]he result is what matters." *Id.* at 435.

Applying these principles to the present case, the Court finds that plaintiffs' award should be reduced by 27.5% because they obtained substantial but partial success. In their administrative complaint, plaintiffs expressed concern that J.J. was failing all of his academic courses due to a lack of specialized instruction. Admin. Compl. at 9–10. Plaintiffs brought three claims against defendant alleging: (1) a failure to comprehensively evaluate the student by not conducting four specific evaluations; (2) a failure to develop an appropriate Individualized Education Programs or

---

5  *See also Brown v. District of Columbia,* 80 F. Supp. 3d 90, 98 (D.D.C. 2015) (observing that it is "within a court's discretion to reduce the overall fee award to reflect that degree of success, regardless of whether the total number of hours expended was reasonable").

placement of services; and (3) a failure to allow Ms. Wright to participate in an eligibility meeting for her son. Hearing Officer Determination at 32–33. Plaintiffs sought the following forms of relief:

- A finding that the student had been denied a Free Appropriate Public Education

- An order directing DCPS to develop Individualized Education Programs with appropriate educational goals and services to include specialized instruction

- An order directing DCPS to fund independent evaluations, including a (1) neuropsychological evaluation, (2) an occupational therapy evaluation, (3) an assessment to confirm or rule out ADHD, (4) and an assessment to address attendance and tardiness

- An order directing DCPS to fund reasonable compensatory education

*Id.* at 33–34.

Based on the evidence introduced in the administrative proceeding, the Hearing Officer found that the school violated the IDEA by not conducting a timely functional behavioral assessment to address the student's attendance issues, but it found no violations stemming from defendant's failure to conduct the other evaluations. Hearing Officer Determination at 43–46. The Hearing Officer also found that defendant waited too long to provide the student with sufficient specialized instruction and an adequate placement, given the clear signs of his academic decline. *Id.* at 47–48, 50. Finally, the Hearing Officer ruled in favor of plaintiffs, finding that defendant violated the IDEA when it held the student's eligibility meeting at a time his mother could not attend. *Id.* at 50. Accordingly, the Hearing Officer entered an order directing defendant to pay for "(a) 150 hours of academic tutoring, and (b) 30 hours of counseling from independent providers," in order "to put [the] [s]tudent in the place [the] [s]tudent should have been, but for the denials of

FAPE." *Id.* at 57. Thus, plaintiffs obtained the most significant relief they sought: funds for substantial specialized services to assist the student in reaching his educational goals.

Defendant insists that plaintiffs "did not even come close to obtaining the full measure of the relief requested" because the Hearing Officer declined to order the school to conduct three out of the four evaluations plaintiffs sought. Def.'s Opp. at 25. That is an overstatement. While those evaluations were part of the relief sought, they were secondary to plaintiff's demand for a compensatory education. Throughout the administrative complaint, plaintiffs expressed concern that J.J. had fallen behind in school, so the substantial compensatory education award goes a long way in addressing their primary concern. *See generally* Admin. Compl. As noted earlier, the Court is required to evaluate the "significance of the overall relief obtained," rather than apply a "mathematical approach" that compares the total number of issues in the case with those actually prevailed upon. *Hensley*, 461 U.S. at 435 n.11. Because plaintiffs' degree of success was high but not absolute, the Court will reduce the overall fee award by 27.5%.

**III. Costs**

Finally, plaintiffs seek to recover the costs of retaining two experts who testified at the administrative hearing, Dr. Ashley Elliot and Ms. Natasha Christie. Pls.' Mem. at 9. Dr. Elliot billed 39.16 hours at $263.00 per hour, amounting to $10,299.08. Time Records at 72. Christie charged $340.00 for her services.[6] In *Arlington Central School District Board of Education v. Murphy*, the Supreme Court held that "the terms of the IDEA overwhelmingly support the conclusion that prevailing parents may not recover the costs of experts or consultants." 548 U.S.

---

6    In their fee petition, plaintiffs do not specify the amount Christie charged. Pls.' Mem. at 10. Defendant suggests that her services correspond to a line item in the billing records titled "Invoice from Infinite Potential." *See* Time Records at 71. Plaintiffs do no deny this claim in their reply so the Court will treat it as such.

14

291, 300 (2006). However, under District of Columbia Law, a Court "may award reasonable expert witness fees as part of the costs to a prevailing party," in IDEA cases. D.C. Code § 38-2571.03(7)(A). The award may not exceed $6,000.00. *Id.* § 38-2571.03(7)(B). A prevailing parent bears the burden of establishing that the experts' rates are reasonable and "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." *Id.*

Plaintiffs provide no supporting documentation to establish the reasonableness of expert Christie's $340.00 charge. As to Dr. Elliot, plaintiffs supply her resume but provide no further supporting documentation to establish that her rates "are based on the rates prevailing in the community" for other experts providing similar services in similar cases. *See* D.C. Code § 38-2571.03(7)(B); Ex. 7 to Pls.' Mot. [Dkt. # 8-2] ("Elliot Resume"). Instead, plaintiffs rely on a single case to argue that Dr. Elliot's rates are in line with other "experts in psychology" in the District of Columbia. Pls.' Mem. at 10, citing *Pryor v. District of Columbia*, 18-cv-920, 2018 WL 4782322, (D.D.C. Sept. 18, 2018), *R. & R. adopted*, 18-cv-920, 2018 WL 4778928 (D.D.C. Oct. 3, 2018) (Bates, J.). But in *Pryor* the experts charged an hourly rate of $170.00 and $195.00, significantly less that Dr. Elliot's $263 hourly rate, and the plaintiff supplied the court with declarations from each expert "reciting the precise fees . . . received from fee-paying clients." *Pryor*, 2018 WL 4782322, at *10. Based on those declarations, the court found that the experts had "charged and been paid their rates for several years and ha[d] been called upon as an expert in a number of due process hearings in the District of Columbia," and this evidence "show[ed] that [p]laintiff's expert's rates reflect[ed] what the market will bear – that is, the prevailing rate – for the services of the kind and quality they offer." *Id.* No such evidence has been submitted by plaintiffs here.

15

Based on this thin record, the Court finds that plaintiffs have failed to meet their burden to establish the "rates prevailing in the community" for their experts and it will deny plaintiffs' request for expert costs without prejudice. *See Burks v. District of Columbia*, No. 118CV2726, 2019 WL 2189488, at *8 (D.D.C. Apr. 16, 2019), *R. & R. adopted*, No. 1:18-cv-02726, 2019 WL 2185371 (D.D.C. May 1, 2019) (recommending denial of award for expert fees because the plaintiff similarly failed to provide any evidence concerning "rates prevailing in the community" and merely produced experts' resumes and relied on a citation to *Pryor*). Accordingly, the Court denies the fee for experts without prejudice to reconsideration based on an additional submission.

Defendant did not oppose the remaining costs listed in the billing invoice which amount to $461.14. *See generally* Def.'s Opp.; Time Records at 70–71.

## IV. Calculation of Fee Award

Plaintiffs will be awarded the following attorneys' fees for work on the IDEA administrative proceeding:

- Kiran Hassan, Attorney: 174.92 hours at $517.00 = $90,433.64
- Robert Jones, Attorney: 3.70 hours at $397.00 = $1,468.90
- Ebony Johnson, Attorney: .68 hours at $323.00 = $219.64
- Coreen Williams, Law Clerk: 2.67 hours at $156.00 = $416.52
- Kelly Escamilla, Paralegal: 1.50 hours at $156.00 = $234.00
- Lucy Hernandez, Paralegal: 24.68 hours at $156.00 = $3,850.08

This amounts to $ 96,622.78 in attorneys' fees. However, the Court will reduce that amount by 27.5% to account for plaintiffs' partial success. Therefore, the final amount of attorneys' fees is $70,051.52. The Court will also grant $461.14 in costs.

## CONCLUSION

For the foregoing reasons, the Court will grant in part plaintiffs' motion for attorneys' fees, and it will award $70,051.52 in attorneys' fees for the underlying administrative proceeding, and $461.14 in costs. Judgment will be entered for plaintiffs in the amount of $70,512.66 in attorneys' fees and costs.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: September 28, 2019